/IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **GREGORY LEE COLLINS JR.,** § | |
| Plaintiff, § | |
| § | Civil Action No. 3:18-CV-3299-N-BH |
| v. § | |
| § | |
| **DENNISE GARCIA, DALLAS COUNTY,** § | |
| **TEXAS, and STATE OF TEXAS,** § | |
| Defendants. § | Referred to U.S. Magistrate Judge[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the case should be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B).

### I.  BACKGROUND

On December 14, 2018, Gregory Lee Collins Jr. (Plaintiff) filed this *pro se* action under 42 U.S.C. § 1983, alleging violation of his constitutional rights to due process and equal protection as well as of his rights under the Texas Constitution during his divorce and child custody proceedings. (doc. 3; doc. 14 at 13-15.)  He sues 303rd District Court Judge Dennise Garcia (Judge), Dallas County, Texas (County), and the State of Texas (State). (doc. 14 at 1, 12-13.)[2]

Plaintiff alleges that after his ex-wife filed for divorce in April 2016, Judge issued an order that enjoined him from the marital property and required visitation with his minor child be supervised. (doc. 14 at 4.) On June 27, 2016, he was notified via email that a pretrial conference had been set for July 25, 2016, and a half-day mediation had been set for August 12, 2016. (*Id.*)  He did not attend the pretrial conference "due to lack of sufficient notice and plans to mediate." (*Id.* at 5.)

---

[1] By *Special Order No. 3-251*, this *pro se* case was automatically referred for judicial screening.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

At the pretrial conference, Judge found him in default and entered a Final Decree of Divorce (Decree). (*Id.*) Plaintiff claims the Decree violated the Texas Family Code because it ordered that visitation with his child be supervised when there was no evidence of family violence, abuse, or neglect, and it ordered him to pay child and medical support without sufficient evidence of his income. (*Id.* at 5-6.) He also claims Judge denied him any rights to the equity in the marital property. (*Id.* at 6.) Because his copy of the Notice of Judgment was mailed to the marital property, he was unaware of the final disposition and did not receive a copy of the Decree until April 2017. (*Id.* at 5, 7.) Plaintiff filed a Petition for Bill of Review on September 1, 2017, to "address the violation of his rights to due process, have his relationship with his son restored, and have his financial obligation made fair." (*Id.* at 8.) At the hearing on his petition in September 2018, Judge allegedly "did not inquire about [his] income or the evidence used to support the amounts ordered for child and medical support" and denied his petition "without explanation." (*Id.* at 10.)

Plaintiff alleges that the State sent an income withholding order to his employer, but it "had not sought nor received evidence to support the withholding order." (*Id.* at 11.) He also alleges that the "Texas Office of the Attorney General" sent him several letters "regarding his child support obligation and possible consequences" as "an attempt to deter him from proceeding with his Petition for Bill of Review." (*Id.* at 10.)

Plaintiff contends that the Dallas County Domestic Relations Office (DCDRO) "monitors and enforces child and medical support on behalf of the State of Texas," but it ignored his requests for a "modification to his financial obligations" and threatened to prosecute him for filing his Petition for Bill of Review. (*Id.* at 3, 8.) A DCDRO employee allegedly refused to speak with him "regarding his child support obligation" and "continued to only prioritize [his] ex-wife." (*Id.* at 9.)

Plaintiff seeks a declaration that the defendants violated his "rights to due process and equal protection under the [Fourteenth Amendment to the] U.S. Constitution" and his "rights to equal rights, equality under the law, protection from cruel and unusual punishment, and due course of law under [Article 1, Sections 3, 3(a), 13, and 19 of] the Texas Constitution;" that "rendering a default judgment during a pre-trial conference in contested divorce cases" was a violation of the Due Process Clause; that a state court's failure to order "joint conservatorship of children" and to provide "a standard possession order of children for grandparents" in contested divorce cases violates the Due Process Clause; and that the Decree "is unconstitutional as enforced and as applied." (*Id.* at 12-16.) He also seeks injunctive relief enjoining the defendants from enforcing the Decree and issuance of a temporary order granting him joint conservatorship of his child. (*Id.* at 16.) No process has been issued.

## II.  PRELIMINARY SCREENING

Because Plaintiff has been granted permission to proceed *in forma pauperis*, his complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2). It provides for *sua sponte* dismissal if the Court finds the complaint "frivolous or malicious" or if it "fails to state a claim upon which relief may be granted." A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. Courts follow the same analysis in determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) as when ruling on a motion to dismiss under Rule 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam). A complaint fails to state a claim upon which relief may be granted when it fails

3

to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. SECTION 1983

Plaintiff sues the defendants for declaratory and injunctive relief under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

**A. <u>Eleventh Amendment Immunity</u>**

In addition to suing State, Plaintiff appears to also sue Judge in her official capacity.[3]

***1. State***

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be

---

[3]Plaintiff's amended complaint does not state the capacity in which he sues Judge. Courts look to the course of proceedings to determine the capacity in which a defendant is sued. *See United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402-03 (5th Cir. 2004)). (noting that while it was unclear whether the complaint named employees in their official or personal capacities, the course of proceedings demonstrated that they were only named in their official capacities, and plaintiff had not challenged the assertion that the employees should be dismissed because they were only named in their official capacities); *Harmon v. Dallas Cty.*, 294 F. Supp. 3d 548, 569 n.6 (N.D. Tex. 2018) (noting that courts generally look to the course of the proceedings to determine the nature of liability sought to be imposed when a plaintiff does not specify the capacity in which an official is sued) (quoting *Adrian*); *but see Douglas v. Gusman*, 567 F. Supp. 2d 877, 888-89 (E.D. La. 2008) (when a *pro se* plaintiff does not specify whether a defendant in named in his official or individual capacity, it is generally presumed by operation of law that the defendant is named in his official capacity) (citations omitted). Because Plaintiff seeks injunctive and declaratory relief and does not assert a claim for monetary damages, he appears to sues Judge in her official capacity. *See Thomas v. State*, 294 F. Supp. 3d 576, 604 n. 13 (N.D. Tex. 2018) (citations omitted).

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This immunity applies to both federal and state law claims brought against it in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Roberson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curiam) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear federal and state law claims).

Although Congress has the power to abrogate immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT & T Commc'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curiam).

Here, Plaintiff seeks declaratory and injunctive relief directly against State itself. He does not allege that State consented to this lawsuit, nor alleged facts showing waiver or abrogation of State's sovereign immunity. *See Will*, 491 U.S. at 71; *AT & T Commc'ns*, 238 F.3d at 643. Accordingly, Eleventh Amendment immunity bars Plaintiff's federal and state law claims against

5

State, and they should be dismissed without prejudice. *See Shah*, 54 F. Supp.3d at 690.

### 2. *Judge*

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Hafer v. Melo*, 502 U.S. 21, 26-27 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Any suit against Judge in her official capacity is therefore a suit against the State of Texas. *See Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 638-39 (N.D. Tex. 2007); *see also Toliver v. Thomas*, No. 3:08-CV-0682-N, 2008 WL 3413140, at *3 (N.D. Tex. Aug. 11, 2008) (citing *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacity.")).

Although Plaintiff's official capacity claims against Judge would normally be barred by Eleventh Amendment immunity, the Supreme Court has created an exception to Eleventh Amendment immunity for suits for injunctive or declaratory relief against individual state officials. *Raj*, 714 F.3d at 328 (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)); *see also Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 321-22 (5th Cir. 2008) ("Pursuant to the *Ex Parte Young* exception, the Eleventh Amendment is not a bar to suits for prospective relief against a state employee acting in his official capacity."). Under this exception, "claims against state officials for prospective injunctive relief under § 1983 . . . are not barred by sovereign immunity." *Kobaisy v. Univ. of Miss.*, 624 F. App'x 195, 198 (5th Cir. 2015) (citing *Nelson*, 535 F.3d at 324); *see May v. N. Tex. State Hosp.*, 351 F. App'x 879, 880 (5th Cir. 2009) (citing *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998)) (stating that the *Ex Parte Young* exception "applies to suits that allege a violation of federal law that are 'brought against individual persons in their official capacities as

6

agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect.'"). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citations, quotations, and alterations omitted); *accord Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255-56 (2011); *see also Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992) ("[T]he relief sought must be declaratory or injunctive in nature and prospective in effect.").

Plaintiff seeks a declaration that the defendants' actions violated his constitutional rights and that the Decree "is unconstitutional as enforced and as applied." (*See* doc. 14 at 15-16.) He also seeks to enjoin the defendants from enforcing the Decree and an order for joint conservatorship of his child. (*Id.* at 16.) To the extent that Plaintiff asserts these claims for declaratory and injunctive relief against Judge in her official capacity, the *Ex parte Young* exception does not apply because his claims are based on past alleged violations, not ongoing violations of federal law. *See Bailey v. Willis*, No. 4:17-CV-00276-ALM-CAN, 2018 WL 3321461, at *5 (E.D. Tex. Jan. 11, 2018), *adopted by* 2018 WL 2126476 (E.D. Tex. May 8, 2018) ("Allegations that a judge has failed correctly to apply the law or render proper judgment point to, if anything, a discrete violation of federal law, and not an ongoing one."); *see also Bowling v. McCraw*, No. 4:18-CV-610-ALM-CAN, 2019 WL 2517834, at *5 (E.D. Tex. Mar. 7, 2019), *adopted sub nom. Bowling v. Dahlheimer*, 2019 WL 3712025 (E.D. Tex. Aug. 7, 2019) ("Moreover, Plaintiff does not request any prospective injunctive relief seeking to enjoin any continued violation of federal law; Plaintiff's requested injunctive relief is retroactive in nature: Plaintiff requests that the Court vacate and/or reverse Judge

7

McCraw's previous orders in the state court case, including orders related to her recusal.") (citation omitted).  Because Plaintiff seeks retrospective declaratory relief from Judge's past orders, and fails to allege that Judge has engaged in any ongoing violation of federal law, the *Ex parte Young* exception does not apply.  *See Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015) (explaining that the Fifth Circuit has "refused to extend the reasoning of [*Ex parte Young*] . . . to claims for retrospective relief."); *Bailey*, 2018 WL 3321461, at *5 ("Failure to allege an ongoing violation of federal law defeats a claim for injunctive relief."); *see, e.g., Citizens Against the Bar v. Travis Cty.*, No. A-13-CV-528-LY, 2014 WL 7338891, at *1, *3-4 (W.D. Tex. Dec. 22, 2014) (finding claims for prospective relief barred because plaintiffs had failed to allege any ongoing violation of federal law), *adopted by* 2018 WL 2126476 (E.D. Tex. May 8, 2018).[4]

Plaintiff's claims against Judge in her official capacity should therefore be dismissed on the basis of sovereign immunity.[5]

**B.**   ***Rooker–Feldman* Doctrine**

The *Rooker-Feldman* doctrine[6] divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and

---

[4]Section 1983 expressly provides that "in any action brought against a judicial officer for an act or omission taken in such officer's official capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983.  Because Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable, his claim for injunctive relief against Judge also fails to state a claim for relief. *See Green v. Mayfield*, No. 3:08-CV-2287-L, 2009 WL 230161, at * 2 (N.D. Tex. Jan. 29, 2009).

[5]To the extent Plaintiff sues Judge in her individual capacity, he has not alleged that she acted without jurisdiction and complains solely of acts or omissions taken in her judicial role, so she is absolutely immune from any individual capacity claims. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

[6]The *Rooker–Feldman* doctrine takes its name from two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

8

rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 281 (2005). "[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)). Under 28 U.S.C. § 1257, only the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered by the highest court of a state. Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

A "state court judgment is attacked for purposes of *Rooker-Feldman* 'when the [federal] claims are inextricably intertwined with a challenged state court judgment.' " *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). *Rooker-Feldman* "does not preclude federal jurisdiction over an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached [,]' " however. *Id.* (quoting *Exxon Mobil Corp.*, 544 U.S. at 293); *accord Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 673 (5th Cir. 2015) (per curiam). The doctrine also does not apply if the state proceedings were ongoing, even if on appeal, at the time the federal suit was filed. *See Gross v. Dannatt*, 736 F. App'x 493, 494 (5th Cir. 2018) (quoting *Ill. Cent. R. Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012)) ("[T]his court has limited the application of *Rooker-Feldman* to those cases in which 'a party suffered an adverse final judgment rendered by a state's court of last resort.'"). The doctrine "generally applies only where a plaintiff seeks relief that directly attacks the validity of an *existing* state court judgment." *Weaver*, 660 F.3d at 904 (emphasis added). Nonetheless, a party cannot

9

escape *Rooker-Feldman* by "casting . . . a complaint in the form of a civil rights action." *Liedtke*, 18 F.3d at 317 (citing cases).

Plaintiff claims that the Decree violated his rights to due process and equal protection under the Fourteenth Amendment and to equality under the law, protection from cruel or unusual punishment, and due course of law secured by the Texas Constitution.[7] (doc. 14 at 12-15.) He specifically seeks a declaration that "rendering a default judgment during a pre-trial conference in contested divorce cases to be a violation of rights to due process under the U.S. Constitution;" that "a judgment made in contested divorce cases, which does not order joint conservatorship of children [and does not provide a standard possession order of children for grandparents], to be a violation of rights to due process under the U.S. Constitution;" and that the Decree "is unconstitutional as enforced and applied." (*Id.* at 15.) He also seeks to enjoin the defendants from enforcing the Decree, and a temporary order for joint conservatorship. (*Id.*) Based on his claims for declaratory and injunctive relief, Plaintiff is seeking collateral review and rejection of the Decree. *See Jordaan v. Hall*, 275 F. Supp. 2d 778, 789 (N.D. Tex. 2003) ("[T]he complaint is nothing more than a thinly veiled attempt to circumvent the state appellate process and to collaterally attack—in the guise of a federal civil rights action—the validity of a state court divorce decree and other related orders.").[8] The *Rooker-Feldman* doctrine divests this Court of subject-matter jurisdiction to hear this challenge. *See Musslewhite v. State Bar of Tex.*, 32 F.3d 942, 946 (5th Cir. 1994) (emphasis original) (quoting

---

[7]The website of the Dallas County District Clerk's Office reflects that the divorce case (DF-16-06957) and the bill of review (DF-17-17661) are closed. (*See* https://courtsportal.dallascounty.org/DALLASPROD.)

[8]The *Rooker-Feldman* doctrine has consistently been applied to bar federal jurisdiction over matters related to divorce and child support. *See Bell v. Valdez*, 207 F.3d 657, 657 (5th Cir. 2000) (unpublished); *see also Anthony of the Family Baker v. Child Support Div. and Dallas Cty. Tex.*, No. 3:18-CV-341-C-BN, 2018 WL 4858743, at *5 (N.D. Tex. Sept. 18, 2018), *adopted by* 2018 WL 4854167 (N.D. Tex. Oct. 5, 2018) (citing cases).

*Feldman*, 460 U.S. at 486) ("[F]ederal courts *do not* have subject matter jurisdiction over 'challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'"); *Turner v. Chase*, 334 F. App'x 657, 660 (5th Cir. 2009) (*Turner I*) (upholding dismissal of § 1983 suit seeking declarations that a divorce judgment was void and vacated, that the divorce petition could be re-litigated, and that state court proceedings violated plaintiff's constitutional rights because it fell "squarely in the category of cases covered by the *Rooker–Feldman* doctrine").

Further, all of the allegations supporting Plaintiff's claims against Judge are based upon her actions and decisions during the divorce court proceedings, i.e., the pretrial conference setting and notice submission, the default rendered against him, her determination that she had sufficient evidence to enter the Decree, her decisions to not order "joint conservatorship of children" and to not issue "a standard possession order of children for grandparents," and the denial of his Petition for Bill of Review. (*See* doc. 14 at 4-11.) Even though Plaintiff attempts to classify his claims as seeking relief from civil rights violations, the sole cause of his alleged injury is the adverse judgment itself. *See United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994); *see also Shqeir v. Martin*, No. 3:97-CV-1887, 1997 WL 587482 at *2 (N.D. Tex. Sept. 15, 1997) (noting that the Fifth Circuit has long held that a plaintiff may not seek reversal of a state court decision "by casting a complaint in the form of a civil rights action"). In a similar case, the Fifth Circuit held that equal protection and due process claims based on allegations that a state judge failed to hold an evidentiary hearing in a plaintiff's divorce case were " 'inextricably intertwined' with the state court judgment" and were prohibited under *Rooker-Feldman* because a federal court "could not rule in her favor without overturning the state court." *Turner v. Cade*, 354 F. App'x 108, 110-11 (5th Cir. 2009) (*Turner II*).

11

Plaintiff's claims against Judge are likewise so "inextricably intertwined" with the Decree that a ruling in his favor would overturn the state court judgment. *See id.*; *see also Riley v. La. State Bar Ass'n*, 214 F. App'x 456, 459 (5th Cir. 2007) (finding no federal court jurisdiction to hear due process and equal protection claims because they were "inextricably intertwined" with state court's decision). The *Rooker-Feldman* doctrine also divests this Court of subject matter jurisdiction over Plaintiff's claims. *See Liedtke*, 18 F.3d at 317.

C. **Municipal Liability**

Plaintiff's § 1983 suit against County appears to be based on the conduct of the DCDRO and its employee in connection with his divorce and child custody action. He generally alleges that the "actions of and negligence by" the DCDRO denied him of his "[Fourteenth] Amendment rights to equal protection and due process." (doc. 14 at 3.)

Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536,

541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691-95.

Here, Plaintiff does not allege that a specific policy was officially adopted and promulgated by County's lawmaking officers or by an official who had been delegated law-making authority. (*See* doc. 14.) He also has not pleaded facts showing that any policy or persistent and widespread practice caused a violation of his constitutional rights. *See Monell*, 436 U.S. at 691-95. He makes only vague and conclusory allegations that his rights were violated because his requests to modify his child support obligations were ignored or denied by the DCDRO, and because a DCDRO employee had threatened to have him prosecuted if he did not drop his Petition for Bill of Review. (*See* doc. 14 at 8-9.) As noted, although County may be held liable under § 1983 if the execution of its customs or policies deprives a plaintiff of his constitutional rights, it may not be held liable under a theory of *respondeat superior*. *See Monell*, 436 U.S. at 690-91; *Piotrowski*, 237 F.3d at 578 (citing cases). Plaintiff has therefore failed to state a claim for municipal liability under § 1983, and his claims against County should be dismissed for failure to state a claim. *Lewis v. City of Waxahachie*, No. 3:10-CV-2578-N-BH, 2011 WL 7070991, at *3 (N.D. Tex. Dec. 21, 2011) (finding that the plaintiff failed to state a claim for municipal liability under § 1983), *adopted by* 2012 WL 176681 (N.D. Tex. Jan. 20, 2012).

### D.     42 U.S.C. § 1988

Plaintiff's amended complaint references the Court's "authority to award attorneys' fees pursuant to 42 U.S.C. § 1988." (doc. 14 at 3.) Because he is proceeding *pro se*, however, he may

not recover attorney's fees. *See Danial v. Daniels*, 162 F. App'x 288, 291 (5th Cir. 2006) ("Attorney's fees are not available to a non-attorney *pro se* litigant.") (citing *McLean v. Int'l Harvester Co.*, 902 F.2d 372, 373 (5th Cir. 1990)); *Vaksman v. C.I.R.*, 54 F. App'x 592 (5th Cir. 2002) ("As a *pro se* litigant, [the petitioner] is not entitled to attorney['s] fees because, quite simply, he did not actually 'pay' or 'incur' attorney['s] fees."). In any event, he is not entitled to attorney's fees because has failed to plead any viable causes of action. *See Everhart v. CitiMortgage, Inc.*, No. H-12-1338, 2013 WL 264436, at *10 (S.D. Tex. Jan. 22, 2013); *Avila v. Mortg. Elec. Registration Sys., Inc.*, No. 4:12-CV-830, 2012 WL 6055298, at *7 (S.D. Tex. Dec. 5, 2012).

## IV. TEXAS CONSTITUTIONAL CLAIMS

Plaintiff seeks "a declaratory judgment declaring the acts of the defendants to be a violation of his rights to equal rights, equality under the law, protection from cruel and unusual punishment, and due course of law under the Texas Constitution." (doc. 14 at 15.) He asserts that this Court has supplemental jurisdiction over his state claims under 28 U.S.C. § 1367. (*Id.* at 3.)

### A. <u>Supplemental Jurisdiction</u>

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1996).

14

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3). This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiffs right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims. Any alleged state law claims arise from the same "common nucleus of operative facts" as his federal claims, namely, the alleged Texas Constitution violations based on his divorce and child custody action. (*See* doc. 14.) Requiring Plaintiff to litigate his claims in state court would "necessarily require consideration by two distinct courts of the same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Given Plaintiff's failure to state a claim for relief against the defendants in federal court, or otherwise show that a genuine controversy exists between the parties, allowing him to file suit in state court would impose unnecessary expenses on the court system and the parties involved. *See McCall v. Peters*, No. CIV.A. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 12, 2003), *aff'd by* 108 F. App'x 862 (5th Cir. 2004) (noting that in determining whether to exercise pendent or supplemental jurisdiction, the court may consider

factors such as the amount of time and resources spent adjudicating the case). Because all three factors weigh in favor of retaining jurisdiction over Plaintiff's Texas Constitution claims, the Court should exercise supplemental jurisdiction and review the claims on the merits.

**B.      Sovereign Immunity**

Although claims for damages are not permitted under the Texas Constitution, "equitable remedies for violation[s] of constitutional rights may be enforced." *McPeters v. LexisNexis*, 910 F. Supp. 2d 981, 990 (S.D. Tex. Oct. 3, 2012) (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995)). "[S]uits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Governmental entities, however, remain immune from suit for declaratory and injunctive relief that are "based on allegations that government officials have violated the law or exceeded their authority." *Dorris v. City of McKinney, Texas*, 214 F. Supp. 3d 552, 557 (E.D. Tex. 2016) (citing *id.* at 372-73); *see also Stem v. Gomez*, 813 F.3d 205, 214 (5th Cir. 2016) ("Under Texas law, sovereign immunity protects the state, its political subdivisions, and cities from lawsuits for money damages or other retroactive relief by depriving a court of subject matter jurisdiction.") (citing *Heinrich*, 284 S.W.3d at 372-73). "[I]t follows that these [*ultra vires*] suits cannot be brought against the state, which retains immunity, but must be brought against state actors in their official capacity." *Heinrich*, 284 S.W.3d at 373; *see Tex. Transp. Comm'n v. City of Jersey Village*, 478 S.W.3d 869, 883 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing cases) (explaining that "sovereign immunity bars declaratory-judgment claims against the governmental entities, as opposed to the governmental actors"). Such lawsuits must "allege, and ultimately prove, that [such state officials] acted without legal authority or failed to perform a purely ministerial act." *Stem*, 813 F.3d

at 214 (alteration original) (quoting *Heinrich*, 284 S.W.3d at 372).

Plaintiff's claims for declaratory relief against the defendants for violations of the Texas Constitution are barred under the doctrine of sovereign immunity. As noted, governmental entities like State and County, retain immunity from declaratory judgment claims under Texas law. *See Stem*, 813 F.3d at 215 (affirming dismissal of state-law declaratory relief claim brought under the Texas Uniform Declaratory Judgment Act because "sovereign immunity insulate[d] the city from the lawsuit"); *Garza v. Gulf Bend Center*, No. CV V-15-006, 2016 WL 590153, at *3 (S.D. Tex. Feb. 15, 2016) (dismissing claims for declaratory relief against non-profit governmental entities on the basis of governmental immunity for failure to state a claim under Rule 12(b)(6)). Although Plaintiff appears to seek declaratory relief against Judge in her official capacity, he does not allege that she acted "without legal authority or failed to perform a purely ministerial act." *See Heinrich*, 284 S.W.3d at 372; *see, e.g., Garza*, 2016 WL 590153, at *3 (finding sovereign immunity still barred prospective equitable relief claim against state official because plaintiffs' complaint failed to "identify in what manner [defendant] in his official capacity violated their rights under the Texas Constitution"); *Creedmoor–Maha Water Supply Corp. v. Texas Comm'n on Envt'l Quality*, 307 S.W.3d 505, 515-16 (Tex. App.—Austin 2010, no pet.) ("[I]f the plaintiff alleges only facts demonstrating acts within the officer's legal authority and discretion, the claim seeks to control state action, and is barred by sovereign immunity."). Any claims for declaratory relief based on violations of the Texas Constitution are subject to sovereign immunity protections and should be dismissed.

## V. RECOMMENDATION

Plaintiff's federal and state law claims against State and Judge in her official capacity, and

the state law claims against County, should be **DISMISSED without prejudice** for lack of subject matter jurisdiction. His federal law claims against County, any claims against Judge in her individual capacity, and his request for attorney's fees under 42 U.S.C. § 1988 should be **DISMISSED with prejudice** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).

**SO RECOMMENDED** on this 12th day of May, 2020.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE